IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Robert D. Brooks, #216605, ) | |
| ) | Civil Action No. 6:09-0992-MBS-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Padula, Warden of Lee C.I., ) | |
| Mailroom Worker Whitney, L. Miller, ) | |
| Mailroom Worker Simon, NFN ) | |
| Oberman, R. Johnson, Ofc. Simon, ) | |
| NFN Ubola, NFN McClary, Lt. Davis, ) | |
| W. Sermons, ) | |
| ) | |
| Defendants. ) | |
| ) | |

This matter is before the court on the defendants' motion for summary judgment (doc. 77) and the plaintiff's motion for summary judgment (doc. 90). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

In his amended complaint, the plaintiff alleges a litany of claims, including that the defendants, all employees of the South Carolina Department of Corrections ("SCDC"), violated his constitutional rights by improperly seizing his personal property, that he has been deprived of his legal mail at Lee Correctional Institution ("LCI"), that his cell was not cleaned frequently enough, and that the defendants failed to timely respond to his grievances.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

On September 2, 2009, the defendants filed a motion for summary judgment. On September 3, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the possible consequences if

he failed to respond adequately. On September 29, 2009, the plaintiff filed a motion for summary judgment, which this court has also construed as the plaintiff's opposition to the defendants' motion. The defendants filed their opposition to the plaintiff's motion on October 1, 2009.

## **FACTS PRESENTED**

The plaintiff was transferred to LCI from another SCDC facility on October 6, 2008. The plaintiff's amended complaint contains numerous allegations relating to his incarceration at LCI. In addition, the plaintiff filed over 50 exhibits with his amended complaint, consisting primarily of copies of Requests to Staff forms, correspondence, and grievances. The plaintiff's claims essentially relate to nine issues,[1] some of which overlap each other: (1) initial processing search and inventory of personal property; (2) inadequate writing and correspondence supplies; (3) retaliatory search of living area; (4) request for dental care; (5) cleaning supplies and cell conditions; (6) use of unsanitary barber equipment; (7) untimely processing of grievances; (8) handling of legal mail; and (9) alternative meal service accompanied by use of force.

According to the plaintiff's amended complaint, the defendants are employed at LCI in the following capacities: defendant Padula, warden; defendant Oberman, unit manager; defendant Miller, grievance coordinator; defendant Johnson, captain over contraband; defendant Simon, contraband officer; the other defendant Simon, mailroom clerk; defendant Ubola, dentist; defendant McClary, dental assistant; defendant Davis, lieutenant; and defendant Sermons, nurse.

---

[1]In their motions for summary judgment, the plaintiff and the defendants address the issues in this manner.

2

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985),

3

*overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

### *Initial Processing Search and Inventory of Property*

The plaintiff alleges that he was illegally searched by defendant Ofc. Simon and certain items of his personal property were improperly taken from him when he was being processed and admitted to LCI for incarceration (amended comp. ¶¶ 1-6, 12, 14-16, 20). The plaintiff further alleges that defendant Simon's search and seizure violated applicable SCDC policy and resulted in his loss of a Sony Walkman and a pair of Koss headphones. The plaintiff alleges that he submitted numerous Request to Staff forms to various defendants, including defendants Johnson, Padula, Miller, and Williams. The plaintiff further alleges that he submitted a formal grievance to defendant Miller. He claims that defendants Padula and Miller refused to take any action in response to his numerous attempts to request relief and such failure to act constitutes a conspiracy between the above-named defendants to violate his First, Fourth, Fifth, Eighth and Fourteenth Amendment rights (*id.*).

The Due Process Clause of the Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. However, the Due Process Clause is not implicated by a negligent act of a state official causing unintended loss of or injury to life, liberty, or property. *Daniels v. Williams*, 474 U.S. 327, 328 (1986); *Pink v. Lester*, 52 F.3d 73, 75 (4th Cir.1995). Thus, to the extent the plaintiff's claims sound in negligence, they cannot be brought under Section 1983.

4

Additionally, an intentional deprivation of property by a state employee, if unauthorized, does not violate the Due Process Clause if a meaningful post-deprivation remedy for loss is available. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). In South Carolina, prisoners may bring an action for recovery of personal property against officials who deprive them of property without state authorization. *See McIntyre v. Portee*, 784 F.2d 566, 567 (4th Cir. 1986) (citing S.C. Code Ann. § 15-69-10, *et seq.*). Such an action provides "a post-deprivation remedy sufficient to satisfy due process requirements." *Id.* (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)).

Here, the plaintiff appears to claim that defendant Simon intentionally deprived him of property by destroying or throwing away his belongings. The plaintiff makes no allegations and presents no evidence that defendant Simon's actions were authorized or approved by either prison policy or any higher ranking supervisory officials. As noted above, he has an adequate post-deprivation remedy. Based upon the foregoing, the claim fails.

***Inadequate Writing and Correspondence Supplies***

The plaintiff alleges that he is not being provided adequate supplies for writing and sending correspondence (amended comp. ¶¶ 7-8). He alleges that he submitted a Request to Staff form to defendant Padula complaining that he is not being provided adequate supplies and that the failure of LCI to provide him sufficient supplies is a violation of SCDC policy. The plaintiff further alleges that defendant Padula failed to take any action in response to his request and that such failure constitutes a violation of his First Amendment rights. The plaintiff also alleges that he submitted a grievance regarding this issue to defendant Miller and that defendant Miller also failed to take any action in response to said grievance. Finally, he alleges that defendant Miller's failure to timely process the grievance was a violation of SCDC policy and constitutes a conspiracy between defendants Padula and Miller to violate his constitutional rights (*id.*).

5

The United States Constitution guarantees prisoners the right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). In *Bounds*, the Supreme Court held that the right of access imposes an affirmative duty on prison officials to assist inmates in preparing and filing legal papers, either by establishing an adequate law library or by providing adequate assistance from persons trained in the law. *Id*. at 828. In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation. This requirement can be satisfied by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. *Id.* at 352-53. A claim for failure to provide access to the courts must be pleaded with specificity. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).

In his own motion for summary judgment, the plaintiff states that his "actual injury" is that he "had to submit his complaint and/or all documents addressed to the court in another inmate's name" (pl. m.s.j. 5). The plaintiff provides no explanation as to why a lack of writing supplies would result in his submission of documents in another inmate's name. Furthermore, a review of the docket shows that the plaintiff has been able to file – in his own name – numerous pleadings and motions with the court, including a 28-page amended complaint and motions for preliminary injunction, to amend, for reconsideration, for waiver of copy fees, for default, and for summary judgment. Based upon the foregoing, the plaintiff has not demonstrated that he has been denied access to the courts. To the extent his allegations relate to the general conditions of his confinement or that the quantity of writing supplies he has been provided violates SCDC policies, his claims also fail to present constitutional issues as will be discussed below.

***Retaliatory Search of Living Area***

The plaintiff alleges that on or about November 7, 2008, an illegal search of his living area was conducted by Officers Bell, Durant, Bolden, and Simon at the request of defendant Johnson (amended comp. ¶¶ 9-10). The plaintiff alleges that said search was conducted "without just cause" and constituted an inappropriate retaliatory reprisal by defendant Johnson in response to the grievances filed by the plaintiff relating to the search conducted during his initial processing at LCI. The plaintiff alleges that he submitted a Request to Staff regarding this issue to defendant Padula and that defendant Padula failed to take any corrective action. The plaintiff further alleges that he submitted a grievance regarding this issue to defendant Miller and that said grievance was not timely processed, in violation of applicable SCDC policy. Finally, the plaintiff alleges that defendant Miller's failure to process the grievance is evidence of deliberate indifference and a conspiracy between defendants Miller, Padula, and Johnson to violate his constitutional rights provided by the Fourth and Fourteenth Amendments (*id.*).

The United States Constitution allows prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). Prison inmates are not entitled to constitutional protection against unreasonable searches and seizures of personal property. *Hudson v. Palmer*, 468 U.S. 517, 526 n.8 (1984). An inmate does not have privacy rights in papers and effects in his cell. *Smith v. Chrans*, 629 F. Supp. 606, 610 (C.D. Ill. 1986).

Retaliation against an inmate for the exercise of a constitutional right may state a claim. *Hudspeth v. Figgins,* 584 F.2d 1345, 1348 (4th Cir. 1978). Retaliation by an official is actionable even if the act would have been proper if taken for different reasons. *American Civil Liberties Union, Inc. v. Wicomico County*, 999 F.2d 780, 785 (4th Cir. 1993). In order to state a retaliation claim, the plaintiff "must allege either that the retaliatory act was taken in

7

response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). A plaintiff must provide facts that the show the exercise of his constitutional right was a substantial factor motivating the retaliation. *See, e.g., Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996). A plaintiff must also show that he suffered some adverse impact on the continued exercise of his constitutional rights as a result of the retaliatory conduct. *Wicomico County*, 999 F.2d at 785-86. Further, the plaintiff must allege specific facts supporting his claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. *Id.* Conclusory allegations of retaliation are insufficient to support his claim or establish the necessary element of adversity. *Id.* Moreover, claims of retaliation are treated with skepticism in the prison context. *Cochran*, 73 F.3d at 1317.

In the instant action, the plaintiff, as stated above, does not have a constitutional right to be free from searches. Accordingly, the alleged retaliatory act itself did not violate a constitutional right. Further, the plaintiff has not shown that the search was conducted in response to his grievances. In addition, the plaintiff fails to provide sufficient facts to show that the alleged retaliatory conduct has had an adverse impact on his continued exercise of any constitutionally protected right. The search allegedly took place on November 7, 2008. Since that time, the plaintiff has filed numerous Requests to Staff and grievances, the instant lawsuit, and numerous pleadings and motions (*see* amended comp., exhibits). Based upon the foregoing, the plaintiff's claim fails.

### *Requests for Dental Care*

The plaintiff alleges that he has submitted multiple requests for teeth cleaning by the dental department and has not been provided any treatment in response (amended comp. ¶¶ 11, 26). He further alleges that defendants Padula, Ubah, and McClary have

8

conspired to deprive him of adequate dental care that he claims is protected by the Eighth Amendment (*id.*).

To the extent these allegations are an attempt by the plaintiff to state a claim for deliberate indifference to serious medical needs, they fail to demonstrate a deprivation of any constitutional rights. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied,* 500 U.S. 956 (1991). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger

9

that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Burton*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

The plaintiff alleges that on numerous occasions he sought to get his teeth cleaned but was denied. However, even assuming such allegations are true, the plaintiff's claim fails. The United States District Court for the District of South Carolina has previously decided at least one case involving a deliberate indifference claim for an inmate's inability get his teeth cleaned regularly:

> Plaintiff asserts that he was denied a dental cleaning, which is a preventative procedure that does not rise to the level of a serious medical need. Plaintiff has failed to provide any evidence to indicate that any denial of a dental cleaning has caused him to suffer any life-threatening medical problems or serious injury. Plaintiff claims that he needs to have his teeth pulled, but has not provided any evidence to support this allegation. Even viewing all assertions and inferences in the light most favorable to Plaintiff, the court cannot find any material issue of fact regarding Plaintiff's claim of deliberate indifference.

*McCoy v. Willis*, C.A. No. 4:07-cv-3563-PMD-TER, 2008 WL 4221745, *4 (D.S.C. 2008).

Similarly, here, the plaintiff has failed to show a serious medical need. Accordingly, summary judgment should be granted on this claim.

***Conditions of Confinement***

In section IV of his amended complaint, the plaintiff alleges he has received inadequate writing and correspondence supplies, received inadequate cleaning supplies, endured unsanitary cell conditions, and observed the use of unsanitary barber equipment. To succeed on any Eighth Amendment claim regarding conditions of confinement, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind."

10

*Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). In order to demonstrate an extreme deprivation, an individual "must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *See Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). Without such showing, a plaintiff must demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions. *See Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997).

The plaintiff first claims that he is not being provided with the amount of writing supplies he would like. As discussed above, the volume of the plaintiff's filings demonstrates that the plaintiff has adequate supplies. More importantly, the filings also demonstrate that his claim is insufficient to establish that he was deprived of the minimal civilized measures of human necessities in such a palpable way that injury should be inferred.

The plaintiff next alleges that he is not being provided adequate supplies with which to clean his cell, that his cell is not cleaned on a timely basis, and that he is forced to endure unsanitary conditions of confinement (amended comp. ¶¶ 13, 17-19, 27-29). The plaintiff claims he has submitted multiple Requests to Staff to defendants Padula and Oberman without corrective action being taken by either. He further alleges that he has submitted a grievance regarding this issue to defendant Miller that was not timely processed, and he claims that the failure to act on the part of defendants Padula and Oberman and defendant Miller's refusal to process his grievance constitute deliberate indifference and evidence of a conspiracy between these defendants to violate his Fifth, Eighth, and Fourteenth Amendment rights (*id.*). Finally, in paragraph 29 of section IV of his amended complaint, the plaintiff refers to complaints of other inmates about the cell conditions in the Special Management Unit ("SMU") and the infrequency of cell cleanings.

The plaintiff has failed to show either the objective or subjective elements of an Eighth Amendment conditions of confinement claim. He has shown neither injury nor a

11

substantial risk of serious harm based upon the challenged conditions. His unsupported allegations of unspecific harm are insufficient to state a claim of constitutional magnitude. Further, with respect to the plaintiff's complaints on behalf of other inmates, he lacks standing to assert such claims. *See Hummer v. Dalton*, 657 F.2d 621, 625-26 (4th Cir. 1981) (a prisoner cannot act as a "knight-errant" for others). Based upon the foregoing, the claim fails.

The plaintiff next alleges that he observed defendant Davis using unsanitary barber equipment when cutting the hair of other inmates (amended comp. ¶ 21). The plaintiff further alleges that he submitted a Request to Staff form to defendant Padula regarding this issue, and defendant Padula failed to take any corrective action in response and simply referred the request to defendant Oberman. He alleges that no corrective action was taken by defendant Oberman to address the issue and that the collective failure to act constitutes a conspiracy between said defendants to violate his Eighth and Fourteenth Amendment rights (*id.*).

First, with respect to the plaintiff's complaints on behalf of other inmates about the barber equipment, the plaintiff lacks standing to assert such claims. Further, while the plaintiff may be of the opinion that unsanitary barber equipment may be being used to cut his hair and that of other inmates, he has offered no evidence of either the objective or subjective elements of an Eighth Amendment claim. Accordingly, the conclusory allegation that his hair is being cut with unsanitary equipment, without more, is insufficient to adequately state a claim of unconstitutional conditions of confinement, and the defendants are entitled to summary judgment on this issue.

***Untimely Processing of Grievances***

The plaintiff alleges that he has submitted numerous grievances that have either gone unprocessed or have not been processed in a timely fashion (amended comp. ¶¶ 22-23, 30). He claims the collective failure to timely process his grievances is a violation

12

of SCDC policy and constitutes a conspiracy between defendants Padula and Miller to violate his First, Fifth, and Fourteenth Amendment rights (*id.*).

First, "there is no constitutional right to participate in grievance proceedings." *Adams v. Rice*, 40 F.3d. 72, 75 (4th Cir. 1994) (citing *Flick v. Alba*, 932 F.2d 728 (8th Cir. 1991)). Second, the plaintiff's allegations that the defendants have not followed their own policies or procedures, standing alone, do not amount to constitutional violations. *See Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C. 1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983). Accordingly, the claim fails.

### *Handling of Legal Mail*

The plaintiff alleges that mail sent to him from an attorney was intercepted and tampered with by LCI mailroom employees defendants Whitney and Simon (amended comp. ¶¶ 24-25). The plaintiff alleges that he submitted a Request to Staff form regarding this issue that was not acted upon and that he ultimately submitted a grievance to defendant Miller that was not processed. Finally, the plaintiff alleges that this collective failure to act in response to his requests constitutes a conspiracy between defendants Miller, Whitney, and Simon to violate his First and Fourteenth Amendment rights (*id.*).

To establish that his rights have been violated by the defendants opening his legal mail, the plaintiff must demonstrate that there was some actual harm or prejudice to his ability to communicate with the court or counsel. *Griffin v. Virginia*, C.A. No. 7:02-cv-00930, 2002 WL 32591574, *3 (W.D. Va.2002) (citing *Lewis v. Casey*, 518 U.S. 343 (1996). *See also Lloyd v. Vincent*, C.A. No. 4:03-1546-25H, 2004 WL 3249250, *4 (D.S.C. 2004) ("To state a claim based on delay or nondelivery of legal mail, a prisoner must allege adverse consequences as a basis for the allegation that the delay or nondelivery deprived him of meaningful access to the courts."). The plaintiff has failed to make such a showing. The

13

plaintiff's claims do not rise to the level of constitutional violations as they do not demonstrate an interference with an attorney/client privilege or his ability to communicate with the court, nor do they create a material issue of fact regarding any allegation of injury sustained by the plaintiff. Accordingly, the defendants are entitled to summary judgment on this issue.

*Alternative Meal Service and Accompanied Use of Force*

The plaintiff's final issue relates to an incident on March 21, 2009, where he was presented an Alternative Meal Service ("AMS") form by defendant McBride that he alleges was approved by defendant Davis and inappropriately signed by defendant Sermons (amended comp. ¶¶ 31-33). The plaintiff further alleges that after expressing a verbal objection to the AMS, he was sprayed with chemical munitions by defendant Davis "without just cause" and received medical treatment as a result (*id.*). The plaintiff alleges that he submitted multiple Requests to Staff to defendants Padula, Bell, and Brooks without receiving any relief in response. The plaintiff further alleges that he ultimately submitted a grievance regarding this issue to defendant Miller that went unprocessed. As with all of the other claims raised by the plaintiff, he alleges that the collective failure to take corrective action by the above named defendants constitutes a conspiracy between them to violate his constitutional rights (*id.*).

First, with regard to the propriety of the AMS form, even if a mistake was made by prison personnel and the plaintiff was presented said form when it was meant for another inmate, the plaintiff has no constitutional right to a particular type of meal, and the defendants' act of placing him on AMS does not in and of itself constitute violation of his constitutional rights. The Fourth Circuit has held that a correctional facility is not obligated to provide a special meal to any inmate if an inmate can voluntarily refrain from eating certain offensive portions of meals and remain healthy. *Abernathy v. Cunningham*, 393 F.2d 775, 778 (4th Cir. 1968). LCI is a prison, not a health spa or a restaurant, and given the logistical and

economical constraints it is simply unfeasible to expect a correctional institution to provide tailor-made meals for each individual inmate's needs and desires. The Constitution compels only that the defendants provide the plaintiff with a nutritionally balanced meal that will maintain his health. *See LeMaire v. Maass*, 12 F.3d 1444, 1456 (9th Cir.1993) (finding that inmate's complaint regarding the use of nutri-loaf does not rise to the threshold level of a constitutional deprivation). The plaintiff has come forward with no evidence that the meals provided to him were insufficient.

With regard to his claim that the defendants subjected him to excessive force by spraying him with chemical munitions, the plaintiff argues that his "conclusory allegations are enough to survive summary judgment" (pl. m.s.j. 17). They are not. The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). The "core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). In determining whether prison officials acted maliciously and sadistically, courts should balance several factors including: 1) the need for the application of force, 2) the relationship between that need and the amount of force used, 3) the threat "reasonably perceived by the responsible officials," 4) any efforts to mitigate the severity of

the force used, and 5) the absence of serious injury. *Id.* Here, the plaintiff has shown no evidence supporting the objective or subjective elements of an excessive force claim. Accordingly, the claim fails.

*Conspiracy*

Included in the plaintiff's allegations related to each of the issues discussed above are additional allegations that various defendants conspired to violate the plaintiff's constitutional rights. To establish a civil conspiracy under Section 1983, the plaintiff must present evidence that the defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in the [plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416 (4th Cir. 1996) (citing *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992)). The plaintiff contends that the defendants "must have been conspiring against him because they declined to provide him the specific relief requested in his numerous Request[s] to Staff and grievances" (pl. m.s.j. 19). The plaintiff has come forward with absolutely no evidence of a mutual understanding of the defendants or that any of the actions or inactions of the defendants amounted to constitutional violations. Accordingly, the plaintiff's conspiracy claims fail.

*Qualified Immunity*

The defendants argue that they are entitled to qualified immunity as their conduct did not violate any clearly-established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly

16

established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). The plaintiff's conclusory allegations fail to demonstrate that the defendants violated his constitutional rights. Therefore, the defendants are entitled to qualified immunity.

### **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 77) be granted and the plaintiff's motion for summary judgment (doc. 90) be denied. Any pending nondispositive motions will be held in abeyance pending the district court's disposition of the motion for summary judgment. Should the district judge adopt this court's recommendation, these motions will be rendered moot.

s/Kevin F. McDonald
United States Magistrate Judge

June 24, 2010
Greenville, South Carolina